UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ISAIAH JENKINS, Plaintiff,

v. Civil Action No. 3:17-cv-151-DJH

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, et al., Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Isaiah Jenkins brings this action against Louisville-Jefferson County Metro Government and Louisville Metro Police Department Detectives Scott Beatty and Emily McKinley, asserting claims for relief under 42 U.S.C. § 1983 and Kentucky common law. (Docket No. 1-2) The dispute arises from Jenkins's incarceration while awaiting trial on charges of complicity to commit murder and complicity to commit robbery. (*Id*., PageID # 7) Jenkins alleges that despite knowing he was not guilty, Beatty and McKinley pursued charges against him and falsified evidence in order to secure an indictment. (*Id*., PageID # 8) Jenkins also alleges that Louisville Metro facilitated this unconstitutional behavior. (*Id*., PageID # 20) Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.N. 5; D.N. 13) For the reasons set forth below, the Court will grant in part and deny without prejudice in part Defendants' motions. The Court also finds that Jenkins should be allowed an opportunity to file an amended complaint to plead his fabrication-of-evidence claim under the correct constitutional amendment.

### I. Background

The following facts are set out in the complaint and accepted as true for purposes of the present motions. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

1

On January 28, 2015, Jenkins attended a social gathering at Raven McDowell's apartment with his acquaintance Maunyeh Haggard. (D.N. 1-2, PageID # 9) At the gathering, Haggard and fellow attendee DeSean Roper got into an argument, which quickly escalated. (*Id.*, PageID # 10) Haggard pulled out a gun and told Jenkins to reach into Roper's pants to retrieve money Roper allegedly owed Haggard. (*Id.*) Jenkins refused to comply, and both he and Haggard were eventually kicked out of the apartment. (*Id.*) Roper's brother Andrew Key-Roper arrived on the scene shortly thereafter. (*Id.*) In the hallway outside the apartment, Haggard approached Key-Roper, who pulled out a knife. (*Id.*) Upon seeing the knife, Haggard fired a fatal shot at Key-Roper. (*Id.*) Jenkins maintains that he was merely a bystander during the entire ordeal. (*Id.*, PageID # 12)

Detective Beatty arrived at the apartment afterwards. (*Id.*, PageID # 11) Upon interviewing some of the party's attendees—none of whom implicated Jenkins in the attempted robbery or shooting—Beatty requested Louisville Police Department's Viper Unit to bring Haggard and Jenkins to the station. (*Id.*) Beatty interviewed both men. (*Id.*) In his interview with Jenkins, Beatty allegedly lied to Jenkins, telling him that Haggard had brought Jenkins's name up during Haggard's interview. (*Id.*, PageID # 12) Following the interview, Beatty informed Jenkins that he was being charged with complicity to commit murder and complicity to commit robbery. (*Id.*, PageID # 13–14) According to Jenkins, Beatty based this decision on an alleged admission by Jenkins that he knew Haggard was going to rob Roper—an admission Jenkins denies ever making. (*Id.*, PageID # 14)

Jenkins was then formally arrested and eventually indicted by a grand jury. (*Id.*, PageID # 15) Jenkins alleges that the arrest and indictment were based on reports prepared by Detectives Beatty and McKinley that contained blatant misstatements—including fabricated eyewitness

2

statements—and grand jury testimony from Beatty that contained false and misleading statements. (*Id*., PageID # 14–15) Jenkins moved to quash the indictment based on false and misleading testimony on February 15, 2016. (*Id*., PageID # 16) On February 16, 2016, Jenkins entered an agreement with the Commonwealth in which he stipulated to the existence of probable cause in exchange for dismissal of the charges. (*See* D.N. 5-2) Because of his inability to post bail, Jenkins had remained incarcerated from his arrest date until the date of the agreement. (*See* D.N. 1-2, PageID # 16)

Jenkins filed this action in Jefferson County, Kentucky Circuit Court on February 15, 2017. (D.N. 1-2) In his complaint, Jenkins asserts four claims against Defendants Beatty and McKinley: (i) malicious prosecution under § 1983, (ii) malicious prosecution under Kentucky common law, (iii) violations of due process under § 1983, and (iv) failure to intervene under § 1983. (*Id*., PageID # 17–20) Jenkins also asserts a § 1983 claim against Louisville Metro for its allegedly unconstitutional policies, customs, or practices. (*Id*., PageID # 20)

On March 13, 2017, Louisville Metro removed the action to this Court. (D.N. 1) Louisville Metro now seeks judgment on the pleadings. (D.N. 5) Defendants Beatty and McKinley join in Louisville Metro's motion. (D.N. 13)

**II.     Standard**

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *CoMa Ins. Agency, Inc. v. Safeco Ins. Co.*, 526 F. App'x 465, 467 (6th Cir. 2013) (citing *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012)). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the Federal Rules' pleading requirements and will not withstand a motion for judgment on the pleadings. *Id.* at 679; *see also CoMa Ins. Agency*, 526 F. App'x at 467. As is the case with a motion to dismiss, for purposes of a motion for judgment on the pleadings, the Court is required to "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill*, 409 F.3d at 716. Finally, the Court may consider public records without converting a motion for judgment on the pleadings to a motion for summary judgment. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

### III. Discussion

**a. Jenkins's § 1983 Malicious-Prosecution Claim**

In Count I of his complaint, Jenkins asserts a claim of malicious prosecution under § 1983 against Detectives Beatty and McKinley. (D.N. 1-2, PageID # 17–18) Malicious prosecution under § 1983 consists of four elements:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure, and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (alteration in original) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)).

In their motion to dismiss, Defendants argue that because Jenkins stipulated to the existence of probable cause, he cannot establish that the criminal proceeding was resolved in his

4

favor and that the officers lacked probable cause. (D.N. 5-1, PageID # 40) Decisions from the Court support Defendants' position. This Court has found that "a stipulation of probable cause in an underlying criminal proceeding bars subsequent claims for unlawful search, false arrest, false imprisonment, and malicious prosecution [under § 1983]." *Shemwell v. Heller*, No. 3:10–cv–336–CRS, 2012 WL 1038114, at *3 (W.D. Ky. Mar. 27, 2012) (citing *Trimbur v. Ky. Lottery Corp.*, 64 F. App'x 970, 974 (6th Cir. 2003)). In the Court's view, any compromise between the prosecution and the accused is not a termination in the accused's favor. *See Jungblom v. Hopkins Cty., Ky.*, No. 4:11–CV–00126–JHM, 2013 WL 1187949, at *6 (W.D. Ky. Mar. 21, 2013) (noting that the primary reason for barring malicious-prosecution claims in light of a stipulation of probable cause is that the accused "[gives] up something to secure the dismissal of the charges and the dismissal was not the unilateral act of the prosecutor" (internal citation and quotations omitted)).

Other federal courts have ruled similarly. *See, e.g.*, *Wilkins v. DeReyes*, 528 F.3d 790, 802–03 (10th Cir. 2008) (finding that "abandonment of the proceedings is ordinarily insufficient to constitute a favorable termination if the prosecution is abandoned pursuant to an agreement of compromise with the accused" (internal alteration and quotation omitted)); *Mpala v. Funaro*, No. 3:13CV00252 (SALM), 2015 WL 7312427, at *6 (D. Conn. Nov. 19, 2015) (finding that the plaintiff's stipulation of probable cause barred his § 1983 malicious-prosecution action); *Canario v. City of New York*, No. 05 Civ. 9343(LBS), 2006 WL 2015651, at *2 (S.D.N.Y. July 12, 2006) (noting that a stipulation of probable cause ordinarily requires the court to grant judgment on the pleadings on a § 1983 malicious-prosecution claim); *Dobiecki v. Palacios*, 829 F. Supp. 229, 235 (N.D. Ill. 1993) ("Where the case is disposed of in a manner that leaves the question of the

accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused.").

There are two notable opinions that reached a contrary conclusion. These decisions are distinguishable from the case presented here, however. In *Harris v. Louisville-Jefferson County Metro Government*, the Court held that a prior stipulation to probable cause did not bar the plaintiff's malicious-prosecution claim. No. 3:11–CV–338–H, 2012 WL 777263, at *3 (W.D. Ky. Mar. 8, 2012). In so holding, the Court noted an affidavit submitted by the plaintiff's counsel in the underlying action, indicating that counsel entered the stipulation without consultation or consent from the plaintiff. *Id*. at *2. The trial transcript also indicated that the plaintiff was not present when the court approved the stipulation/dismissal. *Id*. Here, Jenkins was present in the courtroom when the court approved the stipulation/dismissal. (*See* D.N. 6, Dismissal Hearing, 2/16/16, at 10:32-10:33) The judge asked Jenkins or his counsel to specifically answer whether they stipulated to the existence of probable cause. (*Id*.) Jenkins's counsel turned toward Jenkins and answered the presiding judge, "We do acknowledge that we are stipulating probable cause for the dismissal." *Id*. This evidence, coupled with the fact that Jenkins presents no evidence to indicate that his counsel did not consult with him regarding the stipulation, places this case outside the purview of *Harris*.

Similarly, in *King v. Harwood*, the Sixth Circuit held that the plaintiff's prior stipulation to probable cause did not bar his malicious-prosecution claim. 852 F.3d 568, 582 (6th Cir. 2017). In so holding, the Sixth Circuit distinguished *Broaddus v. Campbell*, 911 S.W.2d 281, 284–85 (Ky. Ct. App. 1995), in which the Kentucky Court of Appeals held that a stipulation to probable cause bars a subsequent malicious-prosecution claim. The *King* court noted that the dismissal in *Broaddus* "had not been vacated or otherwise called into question." *Id*. The

stipulation at issue in *King*, however, was contained in a *vacated Alford* plea. *Id*. Here, Jenkins's plea has not been vacated. And, as detailed above, the evidence does not call into question whether Jenkins knowingly entered the stipulation.

Jenkins additionally argues that the Court cannot rule on this issue without first analyzing whether his stipulation was valid. (D.N. 9, PageID # 51) In support, Jenkins cites *Town of Newton v. Rumery*, 480 U.S. 386 (1987). At issue in *Rumery* was whether the plaintiff's § 1983 claims were barred by a release-dismissal agreement in which he agreed to release any claims he might have against the arresting municipality in exchange for dismissal of the criminal charges against him. *Id*. at 390. In its plurality opinion, the Supreme Court emphasized that while such agreements were not *per se* invalid, neither were they presumptively valid without some sort of inquiry into whether the accused entered into the agreement voluntarily. *Id*. at 396–98.

Relying on Justice O'Connor's concurring opinion in *Rumery*, the Sixth Circuit in *Coughlen v. Coots* adopted a formal test regarding release-dismissal agreements:

> [T]he *Rumery* opinion instructs us that before a court properly may conclude that a particular release-dismissal agreement is enforceable, it must specifically determine that (1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests.

5 F.3d 970, 974 (6th Cir. 1993).

Analogizing stipulations of probable cause to release-dismissal agreements, Jenkins argues that "the agreement to dismiss Jenkins's criminal charges . . . should be analyzed in the same manner as a release-dismissal agreement, instead of treating the stipulation as presumptively valid." (D.N. 9, PageID # 52–53) In support of this contention, Jenkins cites *Phat's Bar & Grill, LLC v. Louisville Jefferson County Metro Government*, No. 3:10–CV–00491–JGH, 2013 WL 275542 (W.D. Ky. Jan. 24, 2013). Jenkins is correct that the Court in

*Phat's Bar & Grill* briefly compared stipulations of probable cause to release-dismissal agreements:

> Plaintiffs allege that [the defendant] has a policy or custom of refusing to dismiss meritless charges without a probable cause stipulation. [The defendant] is correct that release-dismissal agreements can be valid. These agreements are only valid where obtaining the release was motived by an independent, legitimate criminal justice objective, including in situations where police misconduct is alleged, but the prosecutor is genuinely unable to ascertain the truth surrounding the allegation.

*Id.* at *4 (internal citations and quotations omitted). Besides this brief comparison, however, the Court in *Phat's Bar & Grill* never actually applied the *Rumery/Coughlen* standard. Indeed, the decisions that support Defendants' position were all decided post-*Coughlen* with no mention of that decision's three-part test. *See Jungblom*, 2013 WL 1187949; *Shemwell*, 2012 WL 1038114; *see also Grise v. Allen*, No. 5:11-195-KKC, 2016 WL 1261077, at *5 (E.D. Ky. Mar. 30, 2016), *aff'd* No. 17-5221, 2017 WL 4857542 (6th Cir. Oct. 26, 2017) ("[The plaintiff] is unable to establish a material element of [his malicious-prosecution] claim[] due to his prior stipulation to probable cause.").

In short, the brief comparison between stipulations of probable cause and release-dismissal agreements made in *Phat's Bar & Grill* provides an insufficient basis on which to extend the *Rumery/Coughlen* test to stipulations of probable cause. This conclusion is consistent with other opinions that have expressly declined to extend *Rumery* to stipulations of probable cause. *See Precois v. Dilollo*, No. 13-6279, 2015 WL 8513561, at *4 (D.N.J. Dec. 10, 2015) (rejecting the argument that in light of *Rumery*, "whoever relies upon a stipulation of probable cause has the burden to prove that the stipulation is neither involuntary nor the product of an abuse of the criminal process."); *Mpala*, 2015 WL 7312427, at *5 n.2 (distinguishing *Rumery* by noting that "the stipulation here merely has the effect of making it impossible to pursue claims as

8

to which a lack of probable cause is a required element."); *Mitchell v. City of Tukwila*, No. C12–238RSL, 2012 WL 4369187, at *3 (W.D. Wash. Sept. 24, 2012) ("[A]pplication of the 'release-dismissal agreement' doctrine is dependent on the existence of some sort of release-dismissal agreement . . . . [The plaintiff here] has not presented any evidence that would allow the Court even to infer that her stipulation [of probable cause] was the result of some sort of dismissal agreement."). The Court's conclusion is bolstered by the fact that the Sixth Circuit has recently declined to address whether *Coughlen* should apply to stipulations of probable cause. *See Grise*, 2017 WL 4857542, at *5 n.5 ("Still another issue left off the table—and thus one we do not consider today—is whether the Sixth Circuit's rule in *Coughlen* . . . applies in this context [i.e., to stipulations of probable cause]."). In the absence of guidance from the Sixth Circuit, this Court declines to extend *Coughlen*.

Accordingly, the Court finds that it need not consider further the validity of Jenkins's stipulation of probable cause.[1] The stipulation is presumptively valid, and Jenkins is therefore barred from pursuing his § 1983 malicious-prosecution claim. *See Shemwell*, 2012 WL 1038114, at *3.

---

[1] While the Court need not conduct a thorough inquiry into the validity of Jenkins's stipulation based upon the facts of this case, it observes that the colloquy delivered during Jenkins's hearing appears to follow the practice accepted in the courts of the Commonwealth. A review of the hearing record suggests that at minimum Jenkins understood that he was stipulating to probable cause. Jenkins was present in the courtroom when the court approved the dismissal/stipulation, and the presiding judge spoke directly to Jenkins and his counsel. (*See* D.N. 6, Dismissal Hearing, 2/16/16, at 10:32-10:33) Although the Court declines to extend the *Rumery*/*Coughlen* analysis to stipulations of probable cause, there is little doubt that a more thorough hearing to address the validity of such stipulations—and particularly whether a defendant understands a stipulation's impact on his or her rights—would benefit all parties and serve the interests of justice. Without such oversight, "[t]he coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole." *Rumery*, 480 U.S. at 400 (O'Connor, J., concurring in part and in the judgment).

**b. Jenkins's State-Law Malicious-Prosecution Claim**

In Count I of his complaint, Jenkins also asserts a state-law claim of malicious prosecution against Detectives Beatty and McKinley. (D.N. 1-2, PageID # 17–18) Malicious prosecution under Kentucky law consists of five elements:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice . . . ; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016); *see also Tucker v. Heaton*, No. 5:14-CV-00183-TBR-LLK, 2016 WL 7007527, at *6–7 (W.D. Ky. Nov. 29, 2016) (applying *Martin*'s five-element test).

As with malicious-prosecution claims under § 1983, Kentucky courts have found that a stipulation of probable cause bars an action for malicious prosecution. *Broaddus*, 911 S.W.2d 281. In *Broaddus*, the court held that "it is axiomatic that where there is a specific finding of probable cause in the underlying criminal action, or where such a finding is made unnecessary by the defendant's agreement or acquiescence, a malicious prosecution action cannot be maintained." *Id.* at 283. The court explained "that as a matter of law one may not elect to settle a criminal action, stipulate probable cause and maintain that the action was favorable to him on the merits." *Id.* at 285; *see also Pennington v. Dollar Tree Stores, Inc.*, 28 F. App'x 482, 488 (6th Cir. 2002) (applying *Broaddus* to bar a Kentucky malicious-prosecution claim where the plaintiff had signed a stipulation of probable cause).

This Court has recognized, however, that a limited stipulation of probable cause can preserve a state-law claim of malicious prosecution. *See Shemwell*, 2012 WL 1038114, at *4. Jenkins claims that his stipulation was limited and thus he may proceed with his Kentucky

malicious-prosecution claim. (D.N. 9, PageID # 60) But Jenkins's argument misses the mark. In *Shemwell*, the Court found that the plaintiff's limited stipulation of probable cause "with regard to only the [defendant sheriff's department]" did not bar him from proceeding with his claim against a specific deputy. *Id*. Here, Jenkins argues that his stipulation is likewise limited since his counsel merely noted in the underlying proceeding that "[Jenkins and counsel] acknowledge that [they] are stipulating probable cause for the dismissal." (*Id*. (citing D.N. 6, Stipulation of Probable Cause Hearing, 2/16/16, at 10:32:20 – 10:34:00)) Jenkins accordingly maintains that "[t]his limited stipulation of probable cause for purposes of the dismissal should not bar Jenkins from challenging whether probable cause in fact existed." (*Id*.) A stipulation of probable cause for purposes of dismissal, however, is not a limited stipulation. Stipulating to probable cause in exchange for dismissal is in fact the overarching purpose of such stipulations, at least from the accused's point of view. *See Broaddus*, 911 S.W.2d at 284 (construing a stipulation of probable cause as a compromise *dismissal*). Jenkins's approach would swallow the *Broaddus* rule whole. Moreover, Jenkins's stipulation is not "limited" as that term was used in *Shemwell* (i.e., limited as to one defendant but not another).

To avoid dismissal on his malicious-prosecution claim, Jenkins also cites *Williams v. Cline*, No. 2011–CA–000444–MR, 2012 WL 1365964 (Ky. Ct. App. Apr. 20, 2012). (*See* D.N. 9-4) In *Williams*, the court held:

> While this [Kentucky malicious-prosecution] action is not a § 1983 action, we are persuaded by [*Coughlen* and *Rumery*] that a trial court must first make specific findings of fact that the [stipulation of probable cause] was voluntary, that there was no evidence of prosecutorial misconduct, and that public policy interests would not be affected before allowing the agreement to preclude suit for malicious prosecution.

*Id*. at *10. Upon denial of discretionary review, however, *Williams* was ordered not to be published. Pursuant to Ky. R. Civ. P. 76.28(4), unpublished state-court decisions are not binding

11

precedent in any other case in any court of Kentucky. The Court thus finds it inappropriate to resolve Jenkins's state-law claim of malicious prosecution based solely on *Williams*. This is especially so given Kentucky's historic antagonism toward allegations of malicious prosecution "due to the chilling effect [it has] on those considering reporting a crime." *Broaddus*, 911 S.W.2d at 285.

Furthermore, in the years since *Williams*, courts have continued to analyze Kentucky malicious-prosecution claims relying on cases such as *Broaddus* rather than *Rumery* and *Coughlen*. *See, e.g.*, *Grise*, 2016 WL 1261077, at *7, *aff'd* 2017 WL 4857542; *Jungblom*, 2013 WL 1187949; *Noble v. Huffman*, No. 3:12–CV–139–H, 2012 WL 2131803, at *3 (W.D. Ky. June 12, 2012) (citing *Broaddus* to conclude that the plaintiff could not proceed with his Kentucky malicious-prosecution claim).

Additionally, in *Ohnemus v. Thompson*, the Sixth Circuit Court of Appeals held that *Rumery* and *Coughlen* did not mandate harsher scrutiny of an agreement that the plaintiff/accused pay restitution to the arresting sheriff's department in consideration of having charges against him dismissed. 594 F. App'x 864, 868 (6th Cir. 2014). The court distinguished *Rumery* and *Coughlen* on many grounds, including the fact that the dispute in *Ohnemus* involved a Kentucky common-law claim for malicious prosecution, "a cause of action which has historically been disfavored by law." *Id*. (citing *Raine v. Draisin*, 621 S.W.2d 895, 899 (Ky. 1981)). The court also noted that the plaintiff in *Ohnemus*, unlike the plaintiffs in *Rumery* and *Coughlen*, "agreed to pay substantial restitution, *not merely* to forgo his right to file a civil complaint." *Id*. (emphasis added).

Jenkins likewise did not merely forgo his right to file a civil complaint. He entered into a stipulation that Defendants had probable cause to arrest and charge him. Thus, for the foregoing

12

reasons, the Court finds that the *Rumery/Coughlen* test is inapplicable here. *Broaddus* is therefore controlling and mandates a finding that given Jenkins's stipulation, the underlying litigation was not resolved in his favor and he thus may not proceed with his state-law claim of malicious prosecution. *See id.* at 867 ("Only where dismissal indicates that the accused may be innocent of the charges[] have Kentucky courts found that the termination of the proceedings were favorable to the party bringing a malicious prosecution claim.").

**c. Jenkins's § 1983 Due Process Claims**

In Count II of his complaint, Jenkins alleges violations of due process under § 1983 against Beatty and McKinley (D.N. 1-2, PageID # 18) Specifically, Jenkins claims that "Detectives Beatty and McKinley deprived [him] of liberty without due process of law by intentionally falsifying testimony and reports that were used to arrest and indict [him]." (*Id.*)

Defendants move to dismiss this claim based primarily on the recent Ohio federal district court decision in *Stillwagon v. City of Delaware.*, 175 F. Supp. 3d 874 (S.D. Ohio 2016). There, the court held that "if fabricating, destroying, or failing to preserve evidence constitutes a due process violation, the violation is likely remedied through a *Brady* [*v. Maryland*, 373 U.S. 83 (1963),] claim." *Id*. at 900 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 379–81, 391–92, 396–97 (6th Cir. 2009)). This Court recently rejected the notion, however, that a fabrication-of-evidence claim must be treated as a claim for violation of *Brady*. *See Brown v. Louisville Jefferson Cty. Metro Gov't*, No. 3:16-cv-460-DJH, 2017 WL 4288886, at *5 (W.D. Ky. Sept. 27, 2017). Moreover, in *Gregory v. City of Louisville*, the Sixth Circuit held that the plaintiff could proceed with his § 1983 claim for deliberately concealing exculpatory evidence despite the claim's similarity to a *Brady* claim. 444 F.3d 725, 750 (6th Cir. 2006). In so holding, the court approvingly cited a decision that reached the opposite result of *Stillwagon*. *Id.* (citing *Atkins v.*

13

*Cty. of Riverside*, 151 F. App'x 501, 505–06 (9th Cir. 2005) (unpublished opinion) (permitting the plaintiff to pursue, simultaneously, both a fabrication-of-evidence claim and a *Brady* violation claim); *see also Morris v. Boyd*, No. 00-1249, 2000 WL 1720621, at *3 (6th Cir. Nov. 7, 2000) ("A claim of fabricated evidence is a constitutional tort distinct from malicious prosecution, and can be shown without proving that the state lacked probable cause.").

Defendants argue, however, that even if Jenkins may pursue a standalone claim under § 1983 for fabrication of evidence, his claim is barred by the applicable statute of limitations. (D.N. 12, PageID # 97–98) "[Section] 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and [thus] federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985)). In Kentucky, the statute of limitations for a personal-injury claim is one year after the cause of action accrues. Ky. Rev. Stat. § 413.140(1)(a). Yet "[a]lthough state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The Sixth Circuit recently held that the statute-of-limitations period for a fabrication-of-evidence claim does not run while a criminal indictment on the same charges is outstanding. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017).

Thus, Jenkins's fabrication-of-evidence claim did not accrue until the charges against him were dismissed, which occurred on February 16, 2016. (*See* D.N. 5-2) Jenkins filed this action on February 15, 2017, within the one-year limitations period. The applicable statute of limitations therefore does not bar Jenkins from proceeding with his fabrication-of-evidence claim.

Nonetheless, there is a problem with Jenkins's fabrication-of-evidence claim. In *Jackson v. County of Washtenaw*, the Sixth Circuit held that the plaintiff's allegation that the defendants continued his detention without probable cause by falsifying evidence arose under the Fourth Amendment and thus could not be pursued under the Fourteenth Amendment:

> The gravamen of [the plaintiff's] complaint is that [the defendant] continued [the plaintiff's] detention for approximately six months without probable cause by creating and falsifying witness testimony and evidence. [The plaintiff], therefore, must pursue relief for an alleged violation of his constitutional right against continued detention without probable cause under the Fourth Amendment [rather than the Fourteenth Amendment].

310 F. App'x 6, 7 (6th Cir. 2009). The court reasoned that this approach was mandated by *Albright v. Oliver*, 510 U.S. 266 (1994), in which the Supreme Court held that "a plaintiff may no longer bring a cause of action claiming a violation of substantive due process rights under the Fourteenth Amendment when detained without probable cause." 310 F. App'x at 6. The court found that the approach was also mandated by *Gregory*, in which the Sixth Circuit determined that "the subset of malicious prosecution claims which allege continued detention without probable cause must be pursued and analyzed under the Fourth Amendment." *Id.* (quoting 444 F.3d at 750); *see also Ransaw v. Lucas*, No. 1:09 CV 02332, 2013 WL 6179418, at *7 (N.D. Ohio Nov. 25, 2013) (adopting magistrate judge's recommendation that the plaintiff's manufacturing-evidence claim against the defendant officers should be dismissed because he failed to assert the claim as arising under the Fourth Amendment).

Nevertheless, courts have continued to allow claims for continued detention without probable cause based on fabrication of evidence to proceed under the Fourteenth Amendment. *See, e.g.*, *Cleary v. Cty. of Macomb*, 409 F. App'x 890, 898–99 (6th Cir. 2011) (finding that "the district court correctly determined that [the plaintiff] had raised a proper [fabrication-of-evidence] claim under the law in this circuit" without addressing the fact that the plaintiff

pleaded his claim as arising under the Fourteenth Amendment); *Madden v. Calvert*, No. 1:16CV-P147-GNS, 2017 WL 374918, at *3 (W.D. Ky. Jan. 25, 2017) (allowing the plaintiff's claim of fabrication of evidence "in violation of the due process and equal protection clauses of the Fourteenth Amendment" to proceed); *McCauley v. Mayer*, No. 3:13 cv 2115, 2015 WL 413805, at *5–7 (N.D. Ohio Jan. 30, 2015) (same).

Currently, Jenkins pleads his § 1983 fabrication-of-evidence claim as arising under the Due Process Clause of the Fourteenth Amendment. (D.N. 1-2, PageID # 19) The Court concludes, however, that Jenkins should be permitted to amend his complaint to correctly plead his claim as arising under the Fourth Amendment. *See Spurlock v. Whitley*, 971 F. Supp. 1166, 1175–76 (M.D. Tenn. July 17, 1997) (allowing the plaintiffs to amend their complaint where they incorrectly pleaded a § 1983 claim under the Fourteenth Amendment rather than the Fourth Amendment). Jenkins has otherwise alleged facts that appear to support a Fourth Amendment fabrication-of-evidence claim. *See Ferris v. City of Cadillac*, No. 1:15–CV–680, 2017 WL 2991712, at *6 (W.D. Mich. July 14, 2017) (explaining that to succeed on a fabrication-of-evidence claim, the plaintiff must show that the defendants "caused his detention to be unlawfully continued by . . . fabricating evidence [or] withholding exculpatory evidence, the absence of either or both of which would have dissolved probable cause for [the p]laintiff's continued detention" (quoting *Gregory*, 444 F.3d at 747)).

**d. Jenkins's § 1983 Failure-to-Intervene Claim and Custom, Policy, and Practice Claim**

In his complaint, Jenkins also alleges that Detectives Beatty and McKinley violated his rights by "[standing] by without intervening to prevent the violation of Jenkins's constitutional rights, even though [they] had the opportunity to do so." (D.N. 1-2, PageID # 19) Jenkins also

alleges that Louisville Metro has maintained a custom, policy, or practice of promoting or condoning unconstitutional behavior by its law enforcement officers. (*Id.*, PageID # 20)

Defendants' only response is that Jenkins cannot proceed on his final claims because he failed to plead the requisite underlying constitutional violation. (D.N. 5-1, PageID # 42) *See also Stiles v. Grainger Cty., Tenn.*, 819 F.3d 834, 855 (6th Cir. 2016) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." (alteration in original) (quoting *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006))). Because Jenkins has alleged facts that appear to support a Fourth Amendment fabrication-of-evidence claim and because the Court will permit him to amend that claim, it declines to dismiss Jenkins's remaining §1983 claims at this time. Since Defendants present no arguments going to the substance of Jenkins's remaining § 1983 claims, and because the complaint must be viewed in the light most favorable to Jenkins, *Hill*, 409 F.3d at 716, Jenkins may pursue his remaining § 1983 claims at this stage of the proceedings.

## IV. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that

(1) Defendants' motions for judgment on the pleadings (D.N. 5; D.N. 13) are **GRANTED** in part and **DENIED** without prejudice in part.

(2) Jenkins's federal and state-law claims for malicious prosecution are **DISMISSED** with prejudice. Jenkins's fabrication-of-evidence claim is **DISMISSED** without prejudice.

(3) Jenkins shall have **twenty-one (21) days** from the date of entry of this Order within which to file an amended complaint that correctly pleads his fabrication-of-evidence claim under

17

the Fourth Amendment. Jenkins is not permitted to amend his complaint beyond this limited purpose.

January 8, 2018

                                                **David J. Hale, Judge**
                                           **United States District Court**